I please the court, your honors, Thomas Curry on behalf of the appellants in this consolidated action. My clients, your honor, in the case that was filed in Washington, in the Eastern District of Washington, of course, are Don Rodriguez, Adrian Semez, and Sharon Swan, and down in the District of Oregon, my clients are Michael Howard, Samantha Casa, Ora Hooper, and Jenna Fuere. Your honors, I would like to reserve five minutes of my time for rebuttal argument. Your honors, 16 years ago when I entered the practice of law, I had the good fortune of being taken under the wing of a lawyer from Phoenix, Arizona, that had been practicing about 35 years at the time, and it taught me something that I remember and recall every day since. That is, bad facts make bad law. And, your honor, with all due respect to the district court judges here that rendered the opinions at issue here, there is very clearly, we respectfully submit, a dire and strong misunderstanding of the facts that the plaintiffs alleged, which we submit to you, were alleged with sufficient requisite sufficiency under the standards of Twombly and Iqbal, but, of course, in keeping with the notice pleading requirements of Rule 8A, which, of course, the Supreme Court went to great lengths to ensure that, in fact, were not abrogated by its decision. Your honors, the problem, starting with, if you will, the Howard versus the Oregonian publishing case, your honor, is that the judge had entered that opinion, I believe it was August 23rd, 2010, within a matter of days after the Fifth Circuit had entered its opinion in Taylor versus Axiom. And the judge, in somewhat short order, came out in a continued oral argument on connection with the defendant's motion to dismiss the First Amendment complaint and stated that he believed that the facts of the case were somewhat identical, if you will, to that of Taylor versus Axiom and that the gravamen of the plaintiff's complaint was that it is inappropriate for the defendants, in that case the Oregonian newspaper, criminal information services, and Western Mercantile Agency, to obtain the entire database of all the driver's licenses and driver's records in the Motor Vehicles Division of the State of Oregon in bulk. And furthermore, that it was clear from a legislative and contextual reading of the statute to the judge there that, in keeping with Taylor and the Fifth Circuit's opinion in Taylor, that such was entirely appropriate. Your honor, that unfortunately is the bad facts. The plaintiffs have not alleged such in that case. The First Amendment complaint we submit makes very clear in allegations as to that the plaintiffs has alleged a proper violation of the DPPA and a right to do so under Section 2721A and B of the DPPA by alleging, number one, that there was a knowing, obtainment, use, or disclosure of their personal information from the Oregon Motor Vehicles Department without an impermissible purpose. And furthermore, went on to explain the purported purposes that it appears, based upon the contracts and what was stated to the state by these defendants, for what purpose they were putting it, which we further alleged was a misrepresentation, which is also a violation of the DPPA, therefore giving the plaintiff the right to bring the claim under 2721A. Now, your honor. I've got to tell you, I don't see the difference. What facts are different? I'm sorry? I mean, we've got the Taylor case. We have the cases here. You're trying to tell me, and I guess, that the facts are all different here, that the court misunderstood the facts. What's different? Between Taylor and the Howard case? Well, your honor, I think the Fifth Circuit's analysis of Taylor focused on the defendant's purported use of the information. There, they were concerned wholly addressing the issues of Russell, and Russell I and Russell II, out of the Eastern District of Louisiana, that whether or not a reseller and those that are non-resellers, it was appropriate for them to obtain the information in bulk. Whereas in this case, we have alleged that there was, number one, a misrepresented obtainment. Did the defendants here obtain the information in bulk? Yes, sir. How is this case any different? Because, your honor, when they obtained it, they did not have a present purpose. It seems to me you may be saying that Taylor's wrongly decided or Taylor's shouldn't be applied in the context of your plaintiff's claim, but I'm having real trouble figuring out how what happened in Texas is any different from what happened in Oregon or Washington. Well, your honor, as counsel for Taylor, I would actually agree with both of those statements. Well, make those propositions. Don't try to tell me this is a different case. It looks to me like it's exactly the same case. Well, your honor, however, here we have obtainment. We have someone that stated that. And they did in Texas, too, didn't they? Obtainment and use. Okay. So how is the case any different? I mean, like I say, I'm just trying to get my hands in your argument. You come in here and tell me that we're worlds apart from what happened in Texas, only it looks like the facts are exactly the same. You just don't like the result in Texas. Your honor, respectfully, I disagree. Taylor focused on the use, and that was the plaintiff's complaint of allegations and Taylor's reasoning. It focused on the claim of use. You also violate the DPPA by improperly obtaining it or improperly disclosing it. And you can also violate it by making a misrepresentation and doing any of the foregoing. And none of those allegations existed in the Taylor case? Your honor, I think there are broad references to it, but honestly the briefing and the issues addressed by the court and argued by the parties was the use. They jumped straight to the issue of necessarily putting the burden on now the plaintiff to somehow come in and argue at the pleading stage that there is, in fact, a burden now on the plaintiff to prove a negative. So what you're really telling me is that you're shining the light on a different part or a different word in the statute in hopes that that argument will be more successful to focus on obtain rather than use. And that may be true. But as I say, you're starting off in the direction saying the facts are all different in this case, and that part I just don't see. Well, your honor, I think we've had some cases since Taylor and since this case that I think actually shed light on it. We actually have a case that actually just came out last month from the Sixth Circuit, and that's Roth v. Guzman, decided June 13th of 2011. The site is 2011 Westlaw 2306244. And there the Sixth Circuit was addressing the issue of a defendant's complaint of bulk obtainment. But they did say that under Taylor, bulk obtainment was permissible. And in that particular case, it was permissible in the Roth v. Guzman court ultimately reasoned in the Sixth Circuit because there was a present purpose and immediate use that was applied to it. And they said furthermore that that was consistent with Taylor. Now, your honor, that's not something that was addressed necessarily in Taylor and not necessarily addressed by the judge in Howard. And that is, does the plaintiff... But I guess, again, I'm getting to my colleague's point. I guess I'm trying to figure out how are you differentiating your case from what they did in Taylor? How are you differentiating it? You're talking about knowingly obtained. You're saying they have obtained the records. Is that what you're alleging? Your honor, we allege that they represented to the state that they had a permissible purpose for every piece of information in the database at the time it was transferred to them. And that obtainment is illegal. That was not at issue in Taylor. Frankly, as I understand your allegations, they have obtained the information, but the purpose is not permitted. Is that what you're arguing? No, sir. Your honor, it appears that the purpose for which they put it is impermissible. That is an essential element of pleading a DPPA claim. I understand, but I'm just trying to get my arms around then how is your case different? Even if I go to Taylor and I talk about use, I see the statute. You have improved three things. One, that there is a knowing, obtainment, disclosure, or use. Two, it has to come from a motor vehicle record. And three, for a purpose not permitted. And I looked at your complaint. Now you're saying it's different than Taylor. Are you saying it's different because you now are focusing on the purpose in your complaint and that the judge was wrong because you have alleged appropriately what you need to do on purpose? I'm sorry if I misspoke, your honor. That's not my intent. Okay. I'm not alleging that the judge of the Fifth Circuit was wrong in that respect. Rather, the case is different here. And I think that the Ninth Circuit can take upon better reasoning that has come up since these cases have decided. When addressing this issue at the initial pleading stage on a motion to dismiss, there have been a litany of cases, DPPA and non-DPPA statutory cases in the Ninth Circuit and the DPPA, several out of the Southern District of New York, that have specifically said once you've alleged those three things, the other things as to getting into actually content-specific requirements of pleading how it is in fact impermissible is not required under Twombly and Iqbal. And that is what this court ultimately found. They found that ultimately that bulk obtainment is okay. Okay. We agree. There are certain circumstances that it is okay. And the Taylor Court respectfully may disagree in various contexts. But regardless, that is that court's opinion. Bulk obtainment is okay. And whether or not they have a present intent in use for that information, when looking at the issue of resellers, which was what Taylor necessarily addressed, is not at issue here. We're not talking about resellers. We're talking about those that bought this information, obtained it for a purpose that is readily apparent for stockpiling and for their convenience. And as we have stated that the Third Circuit decided in the Pitchler case, that under similar circumstances where there was a party that was gathering up information and gathering up driver's data records for unionization activities, that that was, in fact, an improper purpose. Because they did not actually have a present intent to actually use all of that information that they were obtaining, knowingly obtaining from the Motor Vehicle Records Department. Well, as I recall that case, the purpose they talked about wasn't stockpiling. It was intended to be used for organizing labor. Yes, sir. How does that fit here? You're trying to point at the act of obtaining, the stockpiling, whatever phrase you could describe. And I don't know that's what the Third Circuit was talking about. It was going on. In fact, it seems to suggest that what ultimate purpose was intended is what they should focus on. Because what they looked at wasn't the gathering, the obtaining. It was what are they going to do with it after they got it? Well, they were going to use it for organizing purposes. Your Honor, I don't believe that you're correct that the Third Circuit did not use the word stockpiling. But it's a distinction without a difference, frankly. Because they were doing the very same act. Well, you see, they stopped right there. If what they were concerned about, if you look separately at the act of obtaining, why didn't they stop there? Why did they go on and talk about the intended use in organizing labor? Your Honor, I think because the issue was that there was this gathering of information, regardless of whether or not they actually intended to contact all of these people. There was a purpose to organize labor. Just as the Oregonian newspaper, there is a purpose to contact all, every Oregonian in the state of Oregon, or may possibly collecting overdue newspaper subscriptions from them. So why don't we look at the collecting overdue subscriptions in the same way the Third Circuit looked at organizing labor? Why is it you want us to stop and focus on the, quote, purpose, close quote, of gathering the information in the first instance? Well, Your Honor, but that's exactly the point. I think that this court – That is exactly the point. Has any court stopped and looked at the purpose of that stage? I mean, has any court, in effect, endorsed your theory? So far, I see a series of courts that say, uh-uh, it doesn't seem to work. Your Honor, it's not my theory nor my advancement to the court that this court should do exactly that. What my urging to this court is is that this court should stop before doing that, and that is that it does not and it should not have to put the burden on the plaintiff at the pleading stage, as has been replete in numerous opinions from the Ninth Circuit since these cases have been rendered, and in various courts addressing DPPA-related claims since then as well, that's saying that those are questions for a later day. Well, why? But if the question is, is there such a cause of action, that's a classic failure-to-state-a-claim challenge. We're not – I mean, there have been several references to pleading, but I don't understand this to be about the quality, the content of the complaint. It's whether there's a viable legal theory there, and I read the district court decisions as saying, no, that's not a viable legal theory. But the district court decision, Your Honor, however, basically ignored the Moss standard as to, is there any plausible claim being stated here? Well, I don't know what articulation you're offering, but it is no longer the standard, can you possibly come up with a set of facts that would produce a theory. You've got to be a plausible set of facts, and the problem hasn't been about the facts. I think it's been the courts have decided that, look, the stockpiling's not illegal. Your Honor, the theory is, the Ninth Circuit under Moss v. U.S. is that there must be plausibly suggestive of a claim for relief. And we submit that in the Howard v. Oregonian that we have submitted sufficient facts where there is facts that are plausibly suggestive of a claim for relief, and that the opinion – and furthermore, speaking of Moss v. U.S., Your Honor, the judge in Howard v. Oregonian would not allow the plaintiffs an opportunity to amend in light of this opinion which had been just handed down days before the rendering of his opinion. There was absolutely no – despite our request on the record for – How would you have amended it to change the case? He says there's no cause of action for what you're complaining about. It goes back to the same – the very same thing, and that is bad facts made bad law. Apparently, the judge was under the impression that we were complaining solely of And that is how we could have corrected this thing. And that was the error this judge committed, not allowing us to go back and amend and fill in the details and explain in better detail with more sufficient facts that we think that there are – or that we can show plausibly suggestive facts that assert a claim for relief for violation 2721A under the – And those were – And those were – Oh, sorry. It was the same – Same question. What are they? As non-resellers, therefore distinguishable from the analysis in Taylor which he wrongfully relied upon. So? I guess I'm trying to get to so. Well, because Taylor – I'm trying to figure out one purpose you're going to allege if you're going to amend that's going to make it such that it will not be one of the exceptions or that it is a purpose I ought to worry about. The exceptions, Your Honor, I think have to be more fully fleshed out through a process of discovery in due course. But nonetheless – Well, just allege one. Don't try to dance around there. Just allege me one. I looked for an allegation that they misused or used this other than bulk distribution. I looked for the fact that there's a purchase. I understand there's a purchase. I guess I'm trying to figure out where do I find the misuse or the bad purpose in this other than bulk distribution in your complaint. Your Honor, that would assume that there is, in fact, no violation for impermissibly obtaining it or disclosing this information. And we have – and making misrepresentations in the course of doing so. Well, again, in my book, you're dodging the question. Come to a purpose. If all you're going to look at is obtaining it, that it was not appropriately obtained, then I can only look at bulk distribution. I can only look at that. And if I look at bulk distribution, I think that's a marketing term of art. It has nothing to do – I mean, bulk distribution is taken because they distribute unsolicited mail to customers. But bulk distribution is only a purpose for disclosure. It's not the disclosure. Under certain circumstances, Your Honor. When is it otherwise? Your Honor, there are certain – there are four instances out of the 14 where it is absolutely permissible. Okay. And there are 14 that are – or, excuse me, there are absolute exceptions. There are then the other 10 that are permissible uses. And we have alleged that, first of all, none of the actions we're complaining of here, and that is stockpiling it, using it for your own convenience, using it for your own private fiefdom of information on everybody in the State of Oregon, is inappropriate. Red light, Your Honor. Thank you very much. Thank you. We'll hear from the multiple appellees. Yes, thank you, Your Honor. May it please the Court. I'm Charles Hinkle, and I'm here for the Oregon appellees, the Oregonian. I personally represent the Oregonian, but I'm speaking on behalf of the other two Oregon appellees as well. And I want to first correct one thing that Mr. Correa said about the amended complaint. He was given leave to amend, and he filed his amended complaint on July 21st of 2010, which was one week after the Fifth Circuit decision in the Taylor case came out. And Mr. Correa was well aware of the Taylor case, because he was an attorney of record in the Taylor case in the district court. So I suspect that he knew about the Fifth Circuit opinion on the day that it came out, as the rest of us did, who were trying to hopefully closely follow all developments under this law. The Court has pointed out that the Fifth Circuit has ruled on exactly this theory. And, again, when Mr. Correa says that the Taylor case was about use, let me read just one sentence. We hold that this type of bulk obtainment does not violate the DPPA. The Taylor case is on all fours with this case. It's hard to imagine a more on all fours case, right down to the fact that there was a newspaper defendant in that case, just as there is in this one. What is your response to his argument that you made false representations in order to get this information? Your Honor, he has alleged that defendants each have a signed contract with the state of Oregon whereby they claim they have a proper purpose for obtaining each piece of personal information. So he's alleged that we have made that assurance. His statement then that that's a false statement is supported by absolutely no facts, no evidentiary facts are alleged to support that. He doesn't say we've ever misused it. He doesn't say we have any improper. His only theory of improper purpose is this one of stockpiling. But he doesn't have any evidence and doesn't allege anything that would suggest that we misused it. And I guess I would jump directly then to. He seems to be suggesting that stockpiling itself is an impermissible use, but I don't see that in the statute. It certainly is not, Your Honor. There is one section of the 14 permissible uses. One of them specifically talks about bulk distribution for purposes of marketing and contacting consumers. And in that one instance only, it puts limits on bulk obtainment. The rest of them, bulk obtainment is perfectly permissible without that particular restriction. So the statute doesn't ban bulk obtainment. Both the Fifth and the Sixth Circuits have now held that, squarely held that. And I think he's, well, he has no authority to support his theory. With respect to your question about fraud, Your Honor, I just want to close with this. I don't want to belabor any of it. I just want to go back to what Iqbal said. Remember what the allegations there were that the respondent or that the petitioner, the Attorney General Ashcroft, knew of, condoned willfully and maliciously, agreed to subject the plaintiff in that case to harsh conditions of confinement, did so as a matter of policy solely on account of his race. Ashcroft was the principal architect of this invidious policy. I mean, they were very specific allegations that John Ashcroft personally had been involved in his detention and had authorized and approved those conditions. And the court said, uh-uh. You haven't stated a plausible case for holding John Ashcroft liable. You haven't crossed that threshold. You've got to have some evidentiary facts. And that's the phrase that this court has used, evidentiary facts. I cited four or five cases on page 16 in the footnote on page 16 of my brief, the Oregonian brief, where this court in the last two or three years has applied Twombly and Ichabal to statutory violations, like this one is alleged to be, in which the plaintiffs have pleaded all the elements of the statutory violation. And this court has said over and over, that's not good enough. You've got to make a showing at the pleading stage of plausible allegations as to why this is a violation. These plaintiffs didn't do that, Your Honor, and I think the judgment should be affirmed. Thank you. Thank you. Ms. Sullivan. It goes down. May it please the Court, Susan Sullivan, I'm here on behalf of Members Only, Inc., and also I'm arguing on behalf of the other Washington appellees, Automotive.com and Amco. And obviously, as Your Honors saw fit to consolidate this case with the Oregonian matter, we are talking about essentially the very same allegations of stockpiling on behalf of all of the Washington appellees that were discussed and approved of in the Taylor case, and subsequently last month by the Sixth Circuit in the Ross v. Guzman case. As in the Oregonian case, we are here with a complaint that was amended. Plaintiffs and now appellants were given an opportunity to go back and explain or allege how any one of the defendants had an improper use for the data they were obtaining. And with the amendment, there came no allegations of improper use. Again, we are alleged to be in violation of the statute solely because we have obtained the complete database potentially for later use. Well, the statute does include the word obtained. That's something that's forbidden. Is that correct? It does, Your Honor, and the Taylor case has an interesting, or maybe actually it's the Grasek case that has an interesting discussion on what it means to obtain something. And I believe in that case, Your Honor, they used the analogy of a lawyer having a set of reporters and whether or not they obtained information about all the various different cases if they never in fact opened many of the books on their shelves. Similarly, we all have at our desktop now the ability to go into Lexis or Westlaw and access these statewide databases of information. And the fact that you and I have a password for Westlaw or Lexis that would allow us, theoretically, to go in and punch a few buttons and obtain this information doesn't mean that because we have that access, we have obtained it. And similarly, there – Well, if you have control over something, haven't you obtained it? Your Honor, I think when we're looking at this statute, we're talking about obtaining personal information. Well, I understand, but you have control over all of that information. You've got control of it. How do I get that out of having obtained it if you have control of it? Right. I think, Your Honor, that the better word would be to say that we have access to it. We do not necessarily have control over it. We have the ability to access it. I mean, nobody can take it away from you. Nobody can get it away from you. You've got it. It's there. It's your office. It's yours. I have a tough time with your obtaining argument. The purpose argument, I can see where you're going, but I guess I'm trying to – I'm having a tough time seeing how this is not obtained. Well, I think Your Honor raises a good point because Your Honor started the argument with referencing the three elements of the DPPA, and obviously the first element is knowingly obtaining, disclosing, or using this information. But, again, any one of those actions is not a violation of the statute unless it is done with an improper purpose. And here there is no allegation in any of the complaints we're talking about this afternoon or this morning about an improper purpose in my client or anyone else's obtaining this data from the state. How about stockpiling? Well, Your Honor, I think the issue of stockpiling goes to the fact that this is a relatively new statute, and we are here in an age of modern convenience where we expect to be able to get gas without going to see the person in the kiosk. We expect to be able to write a check or get cash at the supermarket without going to our bank. We expect to be able to buy a flat-screen TV at Best Buy and get immediate financing. And the reason we can do this is because these merchants and vendors have access to information about us to verify these transactions. And I think as is also set forth quite nicely in the amicus brief, there are some very important public safety purposes that immediate access to this information brings. And so in coming up and developing the DPPA, the legislature was, again, trying to balance commercial and public safety interests against the right of privacy. And what they said was let's make the state in the first instance give them discretion to provide their information to those folks that fall within the enumerated exceptions. And beyond that, let us give individuals private right of actions if their information is misused. Now, the appellant refers to some other cases where they've been able to get beyond the pleading stage. Well, in those cases, which haven't been discussed here today, there were specific allegations of folks' personal information getting accessed and used. In Pitchler, it was employees in the parking lot where union workers would take down their license information so they could be contacted. In the Foos case, it was parents of a litigant whose information was reviewed because the litigant was living at his parents, et cetera, et cetera. There is no such allegation of any of the class plaintiffs here. The allegation is that they are a Washington licensed driver and our clients received access to their information, not that their information has ever been reviewed or used in any way, let alone in improper way. And so that is why the district court said you don't get to go past here, you don't get past go here because you have not alleged an injury to any of your plaintiffs in the class from use of this information. And I do think the most important thing to look at here is the statute and a number of the permissible uses in Section 2721B you simply can't get to if you are looking one record at a time. So, for example, 2721B2 talks about using this information for motor vehicle market research activities, including survey research. Item number five talks about, again, use in research activities and producing statistical reports, et cetera. I don't know how you can research or produce statistical reports if you are only allowed to pull one record at a time. I think that the statute clearly contemplates bulk attainment of these records so long as they're being used for a permissible purpose. And the problem here is that appellant has never alleged an impermissible purpose. Well, wouldn't it be also the case that if stockpiling were not a permissible use that companies would obtain the record for a legitimate purpose but after using it once would have to destroy it because the rest would be stockpiled? That's correct, Your Honor. There are very practical difficulties. So it would be an absurd result to suggest that stockpiling is an improper purpose. Absolutely, Your Honor. Again, all of these modern conveniences that we take for granted are dependent on access to this information. And states have the discretion to make it available or not. There's the LocatePlus.com case where a state's decision not to provide the information was upheld. And that, again, is within their discretion. But here the states approved our applications, provided us with the information, and, again, the appellants have shown that there's failed to show any impermissible use of that information. I'm not sure I understand the theory that it's really up to the states. We're talking about a federal statute that tells or purports to tell the State Department of Motor Vehicles what it can't do. Are you suggesting that the state can say, ah, we don't care about that? Not at all, Your Honor. The statute does clearly tell states what they can't do. It also tells them with regard to subsection B of 2721 what they may do. So it is permissive. States could look at the statute and decide that they weren't going to partake or provide that information for certain uses. But, yes, at the very end of subsection B it says may be disclosed as follows. And then you have the 14 enumerated uses. That's all I have, Your Honors. Thank you. Rebuttal? We took your time, but we'll give you two minutes. Thank you, Your Honor. Your Honor, I went back through my complaint and I can't find the word access anywhere. So I think counsel is incorrect that we have alleged that the complaint of act is that they've accessed the records. But I can stand before this Court today and tell you that each of my clients from Oregon and Washington, and, in fact, individually, have been affected by these defendants' actions. Have been what? Have been affected by their actions individually, personally, because they obtained their driver's license, their vehicle registrations, everything containing their picture, their home address. That arguably gives them standing. How have they been hurt? Your Honor, it's interesting how this was called a new law. An 18-year-old law is not a new law. What is new is technology. And what this was passed as is part of a crime bill. Let's not forget that. And the only thing that's new is that technology has advanced so much. And what is clearly imminent is the hurt and the threat here is that by this information being placed in some entity's hands in an unfettered manner, it is inherent that this information is susceptible to a variety of purposes, including identity theft and whoever knows what. There is no restrictions on how, in fact, this is to be kept. If it's supposed to be secured, encrypted, any way whatsoever. And as for the state being up to having the discretion, well, the discretion is very easily thrusted off the state. When each of these defendants made the materially false representation to each of the respective states, that they had a present and then intended purpose for obtaining, then using, and then redisclosing this information. And you say that the only thing that I can see that you suggest is false is that they weren't going to immediately use all of this information. It's simply the fact that they were going to possess it. That's the false statement. That's what's meant. Is that it? Is that what makes this statement false? We start from the premise of this. And you're just trying to, you know, Your Honor, I think the problem is that it appears that there's multiple looking out, looking for what's a permissible purpose, what is not a permissible purpose. We know what's a permissible purpose. There's 14 of them. That is it. The ones that we've alleged obtaining for their convenience, obtaining for their purpose of stockpiling, obtaining for the purpose of conducting their ordinary course of business, maybe someday in the future, is not one of those 14. What they went into the state did, and they checked off which of those 14 applied, and they represented that they had that specific permissible purpose. In the case of the Oregonian, it was in the normal course of their business activities daily. They needed every Oregonian's driver's license and driver's record. That was a misrepresentation that they made. And they obtained it, and they did stockpile it. Pardon me? Do you think the state really thought the Oregonian was going to look up every single person the following day? Your Honor, I don't think the state really had much interest in doing so, because in the contract where they checked off, the Oregonian indemnified the state and held them harmless for violations of the DPPA and their misdeeds in giving it to them and made a whole lot of money in doing so. Your time has expired. And separate from that time, let me ask you, yesterday you filed appellant's notice of filing. It's the life of me. I can't figure out why. What are we supposed to do with this? Your Honor, I just wanted to notify you. No, no, no, no, no. You didn't just wanted something. I mean, you gave it to us for a reason. What was it? Amicus Curiae, the Coalition for the Fair Public Access Records Coalition. In fact, Did you object to the filing of their brief? Yes, Your Honor, we did. Did you oppose the filing of their brief? Your Honor, I believe we did. Yes, sir. We have filed. And when did you do that? Your Honor, I'm sorry. It's to the best of my recollection that we did file an objection in this case to their. If you'd objected, we apparently decided we weren't persuaded and granted it. So are you now challenging again? No, sir. Okay. So what's the purpose of yesterday's filing? I've got to tell you, I didn't. I looked in the docket. I didn't see any objection. But maybe it's there. But what's the purpose of yesterday's filing? Your Honor, I wanted to notify the court that the. I've got to tell you, I think it's a silly motion. But I don't think there's a legitimate purpose in putting it in front of us either. So I was curious if you had some reason that seemed to explain why you're putting it in front of us. And I've heard what I've heard from you. Okay. Thank you for your time. We thank all three counsel for the arguments. Both cases are submitted. That concludes our argument calendar for today. And we're adjourned.
judges: Clifton, Nr Smith, Cjj Korman (Edny), Dj